NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

PREMIUM LEAF, INC., *Plaintiff/Appellant*,

*v.*

ARIZONA DEPARTMENT OF HEALTH SERVICES, et al.,
*Defendants/Appellees.*

No. 1 CA-CV 18-0433
FILED 12-12-2019

Appeal from the Superior Court in Maricopa County
No. CV2017-001137
The Honorable Sherry K. Stephens, Judge

**AFFIRMED**

COUNSEL

Wilenchik & Bartness, P.C., Phoenix
By Dennis I. Wilenchik, Ross P. Meyer
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Aubrey Joy Corcoran, Louis Frank Caputo, III, J. Nicholas Bacon
*Counsel for Defendants/Appellees Arizona Department of Health Services and
Dr. Cara Christ*

Conant Law Firm, PLC, Phoenix
By Paul A. Conant
*Counsel for Defendant/Appellee Buds & Roses, Inc.*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Michael J. Brown joined.

---

**W I N T H R O P**, Judge:

**¶1**          Premium Leaf, Inc. ("Premium") appeals the superior court's dismissal of its complaint for failure to state a claim against the Arizona Department of Health Services and its director, Dr. Cara Christ, (collectively, the "Department") and Buds & Roses, Inc. ("B & R") (collectively, the "Appellees").   Premium argues the Department wrongfully awarded a medical marijuana dispensary registration certificate to B & R and alleges B & R's proposed dispensary location did not comply with local zoning restrictions at the time B & R submitted its registration certificate application.  Premium also contends the Department's actions in awarding the certificate frustrated the purpose of the Arizona Medical Marijuana Act ("AMMA") and created two classes of applicants, between which the rules were applied inconsistently.

**¶2**          Because Premium failed to state a claim upon which relief could be granted, we affirm the superior court's dismissal with prejudice.

### FACTS AND PROCEDURAL HISTORY

**¶3**          The Department is tasked with administering and implementing the AMMA.  *See* Arizona Revised Statutes ("A.R.S.") sections 36-2801(4), -2803.[1]   The AMMA requires nonprofit medical marijuana dispensaries[2] to register with the Department, and it limits the number of

---

[1]      Absent material changes from the relevant date, we cite the current version of all statutes, regulations, and rules.

[2]      "'Nonprofit medical marijuana dispensary' means a not-for-profit entity that acquires, possesses, cultivates, manufactures, delivers, transfers, transports, supplies, sells or dispenses marijuana or related supplies and educational materials to cardholders."  A.R.S. § 36-2801(12).

dispensary registration certificates issued statewide to one per every ten registered retail pharmacies.[3]  A.R.S. § 36-2804(A), (C).

¶4        The Department made its first allocation of dispensary registration certificates in 2012.  *See Compassionate Care Dispensary, Inc. v. Ariz. Dep't of Health Servs.*, 244 Ariz. 205, 209, ¶ 6 (App. 2018).  Periodically, the Department must evaluate whether it may issue additional certificates for potential dispensaries.  Arizona Administrative Code ("A.A.C.") R9-17-303(A).  If additional certificates may be issued, priority is given first to counties without a dispensary and then to geographical units called Community Health Analysis Areas ("CHAAs") with the most registry identification cards issued to qualifying patients.  A.A.C. R9-17-101(8), R9-17-303(B).

¶5        When the Department determines additional dispensary registration certificates can be issued, individuals interested in operating a nonprofit medical marijuana dispensary must submit an application for a dispensary registration certificate to the Department.   A.R.S. § 36-2804(B)(1)(b).  The application must contain, among other information, the proposed location of the dispensary and, if the city or town has enacted zoning restrictions applicable to dispensaries, "a sworn statement certifying that the registered nonprofit medical marijuana dispensary is in compliance with the restrictions."  *Id.* at § 36-2804(B)(1)(d).  To satisfy this requirement, regulations mandate an applicant provide:

> [A] sworn statement signed and dated by the [principal officers of the proposed dispensary] certifying that the dispensary is in compliance with any local zoning restrictions; [and]
>
> Documentation from the local jurisdiction where the dispensary's proposed physical address is located that:
>
> a. There are no local zoning restrictions for the dispensary's location, or

---

[3]        "Pharmacy" means a retailer "where drugs, devices, poisons or related hazardous substances are offered for sale or retail."  A.R.S. § 32-1901(71) (also including locations "in which the profession of pharmacy is practiced"; any place displaying the words "pharmacist," "drugstore," or the like; and locations "where the characteristic symbols of pharmacy" are exhibited).  Pharmacies must be registered according to A.R.S. § 32-1929.

> b. The dispensary's location is in compliance with any local zoning restrictions[.]

A.A.C. R9-17-304(C)(5)-(6).

¶6 After all applications have been submitted, the Department conducts a multi-stage review to determine which of the potential dispensaries should ultimately be awarded the certificate. *See* A.A.C. R9-17-107. First, the Department conducts an administrative completeness review, in which it verifies that the application contains all required information and documents; if anything is missing, the Department must provide the applicant with written notice and time to correct the deficiency. *See* A.A.C. R9-17-107(A), (C). All applications deemed administratively complete then move on to a substantive review, during which the Department determines whether the information contained in the application is what the applicant represents it to be. *See* A.A.C. R9-17-107(D). At this point, the Department may complete an inspection of the proposed dispensary site or make a written request for more information from the applicant. *Id.*

¶7 If multiple applications are deemed administratively and substantively complete, priority is given to the applicant whose proposed dispensary location will provide services to the most qualifying patients based on the number of registered medical marijuana cardholders and other dispensaries operating within ten miles of the applicant's proposed dispensary location. A.A.C. R9-17-303(B)(2). If multiple applicants tie within a 0.1% margin based on these parameters, the Department will select one of the qualifying dispensaries at random. *Id.* at -303(B)(4).

¶8 After applying for and receiving a registration certificate, a proposed dispensary must apply for approval to operate. A.A.C. R9-17-305. There, the potential dispensary must provide, among other things, "documentation issued by the local jurisdiction to the dispensary authorizing occupancy of the building as a dispensary . . . such as a certificate of occupancy, a special use permit, or a conditional use permit." *Id.* at -305(A)(2).

¶9 In 2016, the Department announced it would accept applications for thirty-one new dispensary registration certificates. One of these additional certificates was assigned to CHAA 70, for which both Premium and B & R applied. The certificate was ultimately awarded to B & R.

4

¶10　　　　CHAA 70 is located in the City of Mesa, but B & R's proposed location within CHAA 70 is on a Maricopa County island[4] and is therefore governed by Maricopa County zoning restrictions. The relevant zoning restriction here, Maricopa County Zoning Ordinance ("Zoning Ordinance") 804.2(45)(a), states: "Medical Marijuana Dispensaries shall not be located within 1,500 feet of any other Medical Marijuana Dispensary." The County zoning form that is available to applicants for a dispensary registration certificate provides two options to establish compliance with zoning regulations:

☐ There are no local zoning restrictions for a proposed dispensary at the above location.

OR

☐ The location of the proposed dispensary is in compliance with local zoning restrictions related to where a dispensary may be located.

¶11　　　　At the time of the application, B & R's proposed dispensary address was already housing an existing dispensary. When B & R obtained the county zoning form for its certificate application, the zoning authority that issued the form marked the form's latter option with an asterisk. Below the asterisk, the zoning authority typed:

*ALTHOUGH THIS LOCATION IS CORRECTLY ZONED, ANY EXISTING MEDICAL MARIJUANA FACILITY CURRENTLY OPERATING AT THIS LOCATION WOULD NEED TO VACATE THE LOCATION BEFORE THIS APPLICANT WOULD BE PERMITTED TO OPERATE THERE SO THAT TWO DISPENSARIES DO NOT OPERATE THAT [sic] THE SAME LOCATION.*

In addition, the zoning authority had handwritten next to the statement: "zoning is C-2," which was the correct zoning classification for the location of a dispensary. *See* Zoning Ordinance 804.2(45) (listing medical marijuana

---

4　　　　A county island is an unincorporated pocket of land surrounded by a municipality, multiple municipalities, or a municipality and a reservation, which is not governed by the laws of the surrounding municipality. *See generally Sanderson Lincoln Mercury, Inc. v. Ford Motor Co.*, 205 Ariz. 202, 206, ¶ 12 (App. 2003) (explaining that although a county island is surrounded by an incorporated municipality, it is not part of the municipality).

dispensary facilities as a permitted within C-2 Intermediate Commercial Zoning Districts).

¶12           When B & R was later awarded the dispensary registration certificate from the Department for CHAA 70, the dispensary formerly operating in B & R's proposed location moved to another CHAA and B & R began to operate out of the proposed location.  Premium argues that by using an existing dispensary's address in its application, B & R's proposed location did not comply with all local zoning restrictions because the location was within 1,500 feet of another dispensary—the dispensary currently operating at that location.  Based on this, Premium contends B & R's application should have been rejected.  Premium claims it was the only applicant whose proposed location fully complied with all local zoning ordinances.

¶13           Premium filed suit against the Department, alleging the Department's decision to award B & R the dispensary registration certificate violated the AMMA and harmed Premium by denying it the opportunity to receive the certificate.  The Department moved to dismiss the complaint, arguing that Premium failed to state a claim on which relief could be granted because the complaint rested on an erroneous interpretation of the AMMA.  The Department argued that Premium was conflating the zoning requirements for obtaining a registration certificate ("Step 1") with the zoning requirements for obtaining approval to operate ("Step 2").  *Compare* A.A.C. R9-17-304(C)(6) (requiring documentation by the local jurisdiction that the proposed dispensary location meets any local zoning restrictions in order to apply for a dispensary registration certificate) *with* A.A.C. R9-17-305(A)(2) (requiring documentation by the local jurisdiction authorizing occupancy of the building as a dispensary in order to obtain approval to operate).

¶14           The superior court granted the Department's motion to dismiss in part, but declined to dismiss in full, reasoning that Premium's allegations against the Department rested heavily on the content of B & R's zoning form, which at the time had not been provided to the court.  Taking all facts alleged in the complaint as true, the court observed that the yet-to-be-provided zoning form could include express language alerting the Department to the fact that B & R's proposed location was not in compliance with local zoning requirements.[5]  At the Department's request,

---

[5]      At this early stage, Premium was not aware of the exact location B & R had given on its application; however, after evaluating properties

the court found that B & R was an indispensable party under Arizona Rule of Civil Procedure ("Rule") 19 and directed Premium to join B & R in an amended complaint. Premium filed its First Amended Complaint, which included the local zoning form from B & R's certificate application as an exhibit, and joined B & R as a defendant in the action. The Department again moved to dismiss the action for failure to state a claim, arguing B & R's zoning form demonstrated the proposed location was in compliance with local zoning restrictions and was sufficient zoning documentation for the certificate allocation stage.

¶15　　　　This time, the superior court dismissed the action in full, finding B & R's zoning document sufficient and stating the Department "was not required to do more" to verify the zoning information at this first stage of the dispensary application process. The court explained, "The zoning document was sufficient on its face and the Department could rely on the local zoning authority's determination of compliance . . . ." The court noted that additional zoning verification would not have been required until Step 2 of the dispensary authorization process (application for approval to operate), which step was not at issue for the claims made in the amended complaint.

¶16　　　　Premium now argues the superior court erred in its understanding of what is required at each step of the dispensary registration process and maintains that B & R's application should have been denied at Step 1 based on noncompliance with local zoning restrictions. Premium seeks permanent mandatory injunctive relief ordering the Department to revoke its issuance of the CHAA 70 certificate to B & R and to reallocate the certificate to Premium.

¶17　　　　We have jurisdiction of Premium's timely appeal pursuant to A.R.S. § 12-2101(A)(1).

---

available for use as a dispensary, Premium deduced B & R had either applied with an address located only 130 feet from an existing dispensary or with an address of an existing dispensary. Premium later confirmed B & R had applied with the address of an existing dispensary.

**ANALYSIS**

I. *Standard of Review*

**¶18** "We review de novo a dismissal for failure to state a claim."[6] *Baker v. Rolnick*, 210 Ariz. 321, 324, ¶ 14 (App. 2005). In reviewing, we "assume all the facts alleged in the complaint are true." *Republic Nat'l Bank of N.Y. v. Pima Cty.*, 200 Ariz. 199, 201, ¶ 2 (App. 2001). We will not affirm a dismissal "unless satisfied as a matter of law that plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof." *Fidelity Sec. Life Ins. Co. v. Ariz. Dep't of Ins.*, 191 Ariz. 222, 224, ¶ 4 (1998).

**¶19** We will affirm an agency's decision unless it is "contrary to law, is not supported by substantial evidence, is arbitrary and capricious or is an abuse of discretion." A.R.S. § 12-910(E).

II. *B & R's County Zoning Form*

**¶20** Premium argues that the Department's actions were arbitrary and capricious because it was aware or should have been aware that B & R's proposed dispensary location was not in compliance with local zoning restrictions at the time B & R submitted its application, as shown by the inclusion of qualifying language on B & R's county zoning form. Further, Premium contends the Department was aware or should have been aware that B & R falsely claimed its proposed location was compliant with all local zoning restrictions. Premium maintains that its complaints pertain only to consideration of B & R's application in Step 1 (the certificate allocation process) and that it makes no arguments regarding Step 2 (the approval to operate). In contrast, the Department argues that B & R's zoning form fulfilled the requirements for Step 1 and that Premium is conflating the level of zoning verification required at each of the Steps.

**¶21** The question before us, then, is whether the completed county zoning form—with its supplemental language—was sufficient to show B & R's location was in compliance with local zoning restrictions as required in Step 1.

---

[6] In general, consideration of extrinsic evidence converts a Rule 12(b)(6) motion to a summary judgment motion; however, there are two exceptions to this general rule: (1) a court may consider material which is properly submitted as part of the complaint; and (2) a court may take judicial notice of matters of public record. *See Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 9 (2012).

**¶22**        This court has previously considered the difference in zoning requirements mandated by Steps 1 and 2 of the dispensary registration process.  In *Compassionate Care Dispensary, Inc. v. Arizona Department of Health Services*, we clarified:

> [T]he application for a certificate—step one—requires documentation from the local jurisdiction that "[t]he dispensary's location is in compliance with any local zoning restrictions."   A.A.C. R9-17-304(C)(6).   The application to operate—step two—requires documentation from the local jurisdiction "authorizing occupancy of the building," such as a certificate of occupancy or CUP.[7]  A.A.C. R9-17-305(A)(2).

244 Ariz. at 212, ¶ 21 (second alteration in original).

**¶23**        Premium has never argued B & R should have obtained a CUP or other certificate of occupancy and we do not suggest that such documentation is the issue now; however, our decision in *Compassionate Care* confirms that Step 1, on its plain language, requires the proposed *location* be compliant with zoning restrictions, while Step 2 requires documentation authorizing *occupancy* of the location.  *Id.*  As such, Step 1 of the application process "requires only a statement that the location complies, generally, with local zoning restrictions."  *Id.* at 214, ¶ 30.

**¶24**        Here, the county zoning form, as submitted, was sufficient to show the proposed location complied, generally, with the local zoning requirements.  The option marked on the form was: "The location of the proposed dispensary is in compliance with local zoning restrictions related to where a dispensary may be located."  Although the option was marked with an asterisk, the supplemental language added below reiterated: "this location is correctly zoned" and "zoning is C-2" (the appropriate zoning classification for a medical marijuana dispensary).  *See* Zoning Ordinance 804.2(45).   Additional qualifying language focused on the proposed dispensary's ability to obtain approval to operate, noting: "[A]ny existing medical marijuana facility currently operating at this location would need to vacate the location before this applicant *would be permitted to operate* there so that two dispensaries do not operate that [sic] the same location." (emphasis added).  Issues with a proposed dispensary's potential ability to operate (Step 2 of the process) do not require rejection of the application at Step 1.  *See Compassionate Care*, 244 Ariz. at 213, ¶ 22 ("The statutes and regulations do not require the Department to reject the initial application

---

[7]        CUP is an acronym for Conditional Use Permit.

for a dispensary registration certificate because it lacks [documentation necessary for Step 2].").  Because the regulations at issue for compliance with Step 1 require only that an applicant provide documentation from the local jurisdiction that its proposed location complies, generally, with local zoning restrictions, and because B & R provided such documentation, Premium's argument fails as a matter of law.  *See* A.A.C. R9-17-304(C)(6)(b); *Compassionate Care*, 244 Ariz. at 214, ¶ 30.

**¶25**        Premium, however, contends we must consider the incremental stages of review within Step 1 (the administrative completeness review and the substantive review to determine accuracy of application information) in order to evaluate whether the Department's actions in awarding the certificate were arbitrary and capricious.[8]  *See* A.A.C. R9-17-107(A), (C).  Premium argues that while B & R's county zoning form was sufficient to satisfy the requirements of the administrative completeness review within Step 1, the Department should have found the form insufficient during the substantive review of Step 1 based on the form's qualifying language.

**¶26**        In support of this argument, Premium relies on *Waltz Healing Center, Inc. v. Arizona Department of Health Services*, in which the Department disqualified an applicant at the certificate allocation stage because the zoning letter provided with the application was dated four years prior to the application submission.  245 Ariz. 610, 612-13, ¶¶ 4, 7 (App. 2018).  The Department examined the letter in its Stage 1 review and eventually disqualified the applicant because "the 2012 letter . . . said nothing about whether the . . . dispensary location was in compliance with zoning in 2016."  *Id.* at 614, ¶ 14.  Premium argues the Department rejected the application in *Waltz* because the proposed dispensary's location failed to meet local zoning restrictions.  But, as the court noted in *Waltz*, the Department "denied Waltz's application because Waltz did not fully respond to the Department's [previous] request for information.  In particular, the Department identified Waltz's failure to provide . . . documentation from the local jurisdiction addressing zoning restrictions."  *Id.* at 613, ¶ 7.  In *Waltz*, the Department did not reevaluate the zoning authority's determination of current compliance; rather, the Department

---

[8]        "An agency acts arbitrarily and capriciously when it does not examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  *Compassionate Care*, 244 Ariz. at 213, ¶ 25 (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983)) (internal quotation marks omitted).

found the application incomplete because the expired letter, on its face, was not current documentation that the proposed location complied with local zoning restrictions. *See id.* at 614, ¶ 12; *see also* A.A.C. R9-17-304(C)(6). The decision in *Waltz* supports our conclusion that during the administrative and substantive review stages of Step 1, the Department merely verifies the application includes facially-valid documentation that the location complies, generally, with local zoning restrictions.

¶27 Here, the department did not act arbitrarily or capriciously in relying on the county zoning form's assurance that the location complied with local zoning restrictions. The administrative completeness review of Step 1 required the Department to check that the application contained all necessary documents and information, while the substantive review allowed the Department time to make a "request for more information," as it did in *Waltz*, or "complete an inspection" if needed. *See* A.A.C. R9-17-107(A), (C). The substantive review stage of Step 1 is not, as Premium argues, a time for the Department to "make its own evaluation of whether the proposed address [meets] the standard of 'substantively compliant'" with all applicable local zoning ordinances. Documentation of compliance from the local zoning authority is required with an application precisely because the Department is not in the position to make evaluations of compliance with all local zoning ordinances for every certificate application.[9] The Department may rely on the local zoning authority's representations of compliance with local restrictions at the certificate application stage.

¶28 Premium contends that "[c]onsistent with principles of due process . . . ADHS' review obligations were greater and more involved" than simply receiving the local zoning form and deeming it acceptable. We disagree. B & R's county zoning form provided up-to-date confirmation that the location was correctly zoned, qualified only by language about the proposed dispensary's eventual ability to operate, and the Department could rely on that representation during the certificate allocation process. Because Premium's claim is based on a nonexistent, higher duty read into the rules through its own interpretation of "substantive review," its argument fails as a matter of law.

---

[9] The AMMA gives cities, towns, and counties the ability to enact reasonable zoning regulations applicable to dispensaries. A.R.S. § 36-2806.01. Those local entities are in the best position to ensure compliance with the regulations they implement.

¶29     Premium asserts that this court's recent ruling in *JH2K I, LLC v. Arizona Department of Health Services* supports the argument that the Department has an enhanced duty to verify actual compliance with zoning restrictions during the substantive review stage of Step 1. 246 Ariz. 307, 309, ¶ 4 (App. 2019). In *JH2K I*, the Department determined JH2K's application was not substantively complete because it was missing verification that the proposed location was "at least 500 feet from a private school or a public school that existed before the date the dispensary submitted the initial dispensary registration certificate application." *Id.* (quoting A.A.C. R9-17-321(A)). Although JH2K tried to submit additional documentation that it met the distance requirement, the Department eventually denied the application finding that, when measured from property line to property line, the proposed location was within 500 feet of a school. *Id.*

¶30     Premium argues *JH2K I* confirms the Department must conduct its own evaluation of zoning compliance during the Step 1 substantive review stage of the certificate application process. However, we find *JH2K I* distinguishable from the case at hand. The distance requirement at issue in *JH2K I* was not merely a local zoning restriction; instead, it was a condition explicitly mandated by the AMMA and related administrative code. *See* A.R.S. § 36-2804(B)(1)(b)(ii) (stating the physical address of the dispensary given on a certificate application may not "be within five hundred feet of a public or private school existing before the date of the nonprofit medical marijuana dispensary application."); A.A.C. R9-17-322(A)(1) ("The Department shall deny an application for a dispensary registration certificate or a renewal if . . . the physical address of the building . . . is within 500 feet of a private school or a public school that existed before the date the dispensary submitted the initial dispensary registration certificate application[.]").

¶31     Under A.A.C. R9-17-322(A)(1), the Department had a clear, affirmative duty to deny JH2K's certificate application if the proposed location was not an appropriate distance from surrounding schools. *See id.* The AMMA and related rules gave the Department notice of the school distance requirement and of the Department's responsibility to specifically enforce that separation at the certificate application stage. *See id.* In contrast, distance requirements mandated by local ordinances are not explicitly included in the AMMA or related rules, so the Department may not be immediately aware of specific local separation requirements that apply to proposed dispensaries. In B & R's case, the supplementary language on the zoning form did not cite which local zoning ordinance was at issue or even explain what distance was mandated by local restrictions

between dispensaries. Nonetheless, Premium contends that the supplementary language was included so that the Department itself could evaluate if the location was compliant with local zoning restrictions. If this were true, it would require the Department to research applicable zoning restrictions specific to each locality and evaluate zoning compliance for every application, which would essentially render the required documentation of compliance from the local zoning authority superfluous. We cannot accept such a counterintuitive interpretation of the application requirements.

¶32        More to the point, unlike the applicant's proposed location in *JH2K I*—which could never physically be brought into statutory or administrative compliance—the supplemental language provided by the county on B & R's form correctly confirmed appropriate zoning and noted a path of operational compliance once the existing dispensary at the subject location moved to a different location.

### III.    *Frustrating the Purpose of the 2016 Allocation*

¶33        Next, Premium argues that by awarding the dispensary registration certificate to B & R, whose proposed location would replace an existing dispensary, the Department frustrated the purpose of the AMMA[10] and of the 2016 certificate allocation process. Premium asserts that "the purpose and goal of the 2016 certificate allocation process . . . was to provide a second dispensary in the 31 CHAAs with the highest patient cardholder populations" based on the regulatory scheme in A.A.C. R9-17-303, "which scored certificate applicants in Step One almost entirely according to the number of patient card-holders served by the proposed dispensary's location." *See* A.A.C. R9-17-303. Accordingly, Premium maintains that the 2016 allocation was meant to *add* a dispensary to those CHAAs with a high

---

[10]        We give primary consideration to the potential frustration of the 2016 certificate allocation process rather than frustration of the purpose of the AMMA as a whole. "[T]he purpose of [the AMMA] is to protect patients with debilitating medical conditions, as well as their physicians and providers, from arrest and prosecution, criminal and other penalties and property forfeiture if such patients engage in the medical use of marijuana." Ariz. Sec'y of State, 2010 Publicity Pamphlet 73 (2010), https://apps.azsos.gov/election/2010/info/PubPamphlet/english/e-book.pdf. The Department's actions in awarding a dispensary registration certificate to a proposed dispensary that would replace an existing dispensary did not contravene this purpose.

patient population density in order to serve more patients, which the Department failed to do by instead substituting one dispensary for another.

**¶34**　　　　The relevant rule, A.A.C. R9-17-303(B), explains that if additional dispensary registration certificates are available after certificates are allocated to counties that do not already contain a dispensary, then "[t]he Department shall prioritize and assign a dispensary registration certificate allocation to a CHAA based on which CHAA has the most registry identification cards issued to qualifying patients who reside within the CHAA."　A.A.C. R9-17-303(B)(2)(a).　But the AMMA does not ensure every CHAA will have a requisite number of dispensaries.　*See generally* A.R.S. §§ 36-2801 to -2819.　Rather, the rules purposefully grant dispensaries the flexibility to move to a different CHAA from that in which their original certificate was issued.　*See* A.A.C. R9-17-306(B)(1)(b) ("A dispensary may change [its] location . . . [a]fter the first three years after the Department issues a dispensary registration certificate to the dispensary, to another location in the state[.]").　Considering these rules together, we recognize that the process for allocating dispensary registration certificates must coexist with the ability for current dispensaries to move.　*See State ex rel. Larson v. Farley*, 106 Ariz. 119, 122 (1970) ("[A] statute should be explained in conjunction with other statutes to the end that they may be harmonious and consistent.").　The existing dispensary that B & R replaced had the ability to move at any time after three years, and the Department was not obligated to award the registration certificate to ensure that two dispensaries would operate in CHAA 70.　Premium's claim that the Department's actions frustrated the purpose of the 2016 certificate allocation process fails.

> *IV.　Due Process and Two Classes of Applicants*

**¶35**　　　　Premium argues that in accepting B & R's certificate application, the Department created two classes of applicants—those affiliated with existing dispensaries and those who were not—and applied the rules inconsistently between them.　Appellees contend this argument was waived because it was not pled in Premium's complaint and was raised for the first time in Premium's motion for reconsideration of the superior court's dismissal.

**¶36**　　　　On appeal, we generally do not consider arguments raised for the first time in a motion for reconsideration because "the prevailing party below is routinely deprived of the opportunity to fairly respond."　*Evans Withycombe, Inc. v. W. Innovations, Inc.*, 215 Ariz. 237, 240, ¶ 15 (App. 2006).

However, we find this argument was briefly raised during the hearing for the motion to dismiss and so we address the validity of the claim.

¶37        In support of its argument, Premium maintains that an "applicant[] in collusion with an existing dispensary" would receive an advantage when the Department measured the density of qualifying patients around the proposed location because use of an existing dispensary's address would capitalize on the high patient population around the current dispensary.  Premium suggests B & R was able to "artificially capture the existing dispensary's surrounding patient population," which in Premium's view was "the only determinative criteria in [B & R's] ultimate selection to receive the certificate."[11]

¶38        We find Premium's claim fails because it does not allege any facts to support a conclusion that the Department treated applicants inconsistently.  Rather, Premium's argument seems to admit that the Department treated applicants the same, suggesting the Department measured the patient cardholder population that would be served by each proposed location and awarded the certificate to the proposed location that would cover the most existing patients.  Nothing in the AMMA or related rules prohibits an applicant from contracting with an existing dispensary to take over its space.  Similarly, nothing prevented Premium itself from seeking to contract with a current dispensary to take over an existing space and benefit from any qualifying patients already in that area.  Because Premium did not allege any set of facts that would support a claim of inconsistent treatment, its argument fails as a matter of law.

---

[11]        Premium also claims B & R should have been given the lowest possible score for patient population covered because B & R's proposed location would cover the exact patient population already covered by the existing dispensary at that address.  *See* A.A.C. R9-17-303(B)(2)(c) (prioritizing allocation of the certificate to the proposed location that will provide services to the most qualifying patients).  The argument falls short, however, as Premium later admits that the "two dispensaries could not and would not ever simultaneously exist [at the same location]."  As the proposed dispensary and existing dispensary could not simultaneously operate at the same location, each would instead be capitalizing on the surrounding patient population at a different time.  B & R's score was based on the qualifying patients that its location would cover if it were to not only obtain the dispensary registration certificate but also the approval to legally operate.

### V.     Right to Amend Complaint

**¶39**      Finally, Premium alleges that before a motion to dismiss for failure to state a claim should have been granted, Premium should have been given the opportunity to amend its complaint.  But Premium never moved to file a second amended complaint, nor did it request or argue for leave to amend its complaint in its motion for reconsideration.  *See Blumenthal v. Teets*, 155 Ariz. 123, 131 (App. 1987) (When "the plaintiff did not file any motion to amend the complaint[,] [t]he failure of the trial court to allow plaintiff to amend the complaint was not error.").  Accordingly, we will not reverse the court's decision based on the lack of opportunity to amend the complaint.

### VI.     Costs on Appeal

**¶40**      B & R requested its costs incurred on appeal under A.R.S. §§ 12-341 and -342.  We grant B & R its costs associated with this appeal pursuant to A.R.S. § 12-341, contingent on its compliance with Arizona Rule of Civil Appellate Procedure 21(a).

### CONCLUSION

**¶41**      For the foregoing reasons, we affirm the superior court's dismissal of Premium's first amended complaint in its entirety, with prejudice, for failure to state a claim.



AMY M. WOOD • Clerk of the Court
FILED:  AA

16